J-A04030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEREK C. SEIDERS | : | |
| | : | |
| Appellant | : | No. 708 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 22, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001396-2022

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: MAY 22, 2025**

Appellant Derek C. Seiders appeals from the judgment of sentence imposed after Appellant entered a plea of *nolo contendere* to one count of rape and one count of simple assault.  On appeal, Appellant challenges the trial court's denial of his pre-sentence motion to withdraw the plea.  After careful review, we affirm on the basis of the trial court's opinion.

Appellant was initially charged with one count of rape, one count of aggravated indecent assault, one count of incest, one count of sexual assault, one count of corruption of minors, two counts of endangering the welfare of children, and one count of simple assault.[1]  *See* Crim. Information, 8/8/22. The matter was listed for a jury trial and, on the date scheduled for trial, Appellant entered a plea of *nolo contendere* to one count of rape and one

_____

[1] 18 Pa. C.S. §§ 3121(a)(1), 3125(a)(7), 4302(b)(1), 3124.1, 6301(a)(1)(ii), 4304(a)(1), and 2701(a)(1), respectively.

count of simple assault. *See* Order, 10/16/23. In its Rule 1925(a) opinion, the trial court summarized the facts underlying the rape and simple assault charges as follows:

> On or about July 4, 2019, through December 31, 2019, in the area of 4756 Enola Road, on three occasions [Appellant] forcibly had sex with the victim L.J.H., Appellant's daughter, who was 12 and 13 years old at the time. The first incident occurred on the 4th of July where he forcibly had vaginal sex with her. The second incident occurred towards the end of summer, in which [Appellant] came into her room, covered her mouth, held her down, and forcibly had vaginal intercourse with her. The third occasion, [Appellant] took the victim to his room, bound her hands and feet, and forcibly had oral sex with her.
>
> * * *
>
> At the time, the juvenile, L.B.H., Appellant's son, was living in the home. [Appellant] would strike him causing him to bleed on several occasions. . . . L.B.H. was 9 years old at the time. . . . The strikes were in the face.

Trial Ct. Op., 7/24/24, at 2 (some formatting altered and citation omitted).

However, on February 5, 2024, Appellant filed a pre-sentence motion to withdraw his plea. *See* Mot. to Withdraw No Contest Plea, 2/5/24. The trial court held a hearing on February 26, 2024, and in an order filed the following day, the trial court denied Appellant's motion to withdraw his plea. *See* Order, 2/27/24. On April 22, 2024, the trial court sentenced Appellant to a term of five to fifteen years of incarceration, followed by three years of probation on the rape charge. *See* Sentencing Order, 4/22/24, at 1. The trial court imposed a concurrent term of two years' probation for the simple assault charge. *See id.* at 2. This resulted in an aggregate sentence of five to fifteen

years of incarceration, followed by three years of probation. *See id.* at 1-2. Further, Appellant was determined to be a sexually violent predator (SVP),[2] and he was ordered to comply with the lifetime reporting requirements pursuant to the Sex Offender Registration and Notification Act[3] (SORNA). *See id.* at 1. Appellant filed a timely appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue:

Whether the honorable trial court erred in denying [Appellant's] pre-sentence motion to withdraw *nolo contendere* plea?

Appellant's Brief at 7 (some formatting altered).

It is well settled that a criminal defendant "has no absolute right to withdraw a guilty plea; rather, the decision to grant such a motion lies within the sound discretion of the trial court." *Commonwealth v. Muhammad*, 794 A.2d 378, 382 (Pa. Super. 2002) (citation omitted). We review the denial of a motion to withdraw a guilty plea for an abuse of discretion. *Commonwealth v. Gordy*, 73 A.3d 620, 624 (Pa. Super. 2013).[4] "An abuse

---

[2] Appellant was designated an SVP in a separate order entered on April 22, 2024.

[3] 42 Pa.C.S. §§ 9799.10-9799.75.

[4] Our Supreme Court has explained that "[w]hen a defendant enters a plea of *nolo contendere*, he technically does not admit guilt. However, for purposes of a criminal case, a plea of *nolo contendere* is equivalent to a plea of guilty." *Commonwealth v. Norton*, 201 A.3d 112, 114 n.1 (Pa. 2019) (citation omitted).

of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, and/or misapplication of law." *Id.* (citation omitted).

The standards required for withdrawing a guilty plea differ "depending on whether the defendant seeks to withdraw the plea before or after sentencing." *Commonwealth v. Hart*, 174 A.3d 660, 664 (Pa. Super. 2017). In the context of a pre-sentence motion to withdraw a plea, our Supreme Court has stated:

> [T]here is no absolute right to withdraw a guilty plea; trial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.

*Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1291-92 (Pa. 2015) (citation and footnote omitted); *see also* Pa.R.Crim.P. 591(A) (stating that "[a]t any time before the imposition of sentence, the court may, in its discretion, permit . . . the withdrawal of a plea").

> A fair and just reason exists where the defendant makes claim of innocence that is at least plausible. *Carrasquillo*, 115 A.3d at 1292. "Stated more broadly, 'the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." *Norton*, 201 A.3d at 120-21 (quoting *Carrasquillo*, 115 A.3d at 1292). "[T]rial courts have discretion to assess the plausibility of claims of innocence." *Id.* at 121.

*Commonwealth v. Garcia*, 280 A.3d 1019, 1023 (Pa. Super. 2022) (footnote omitted).

This Court has explained that "the law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." *Commonwealth v. Reid*, 117 A.3d 777, 783 (Pa. Super. 2015) (citations omitted and formatting altered). "A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis of the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." *Id.* at 782 (citations and quotation marks omitted). "Furthermore, nothing in [Pa.R.Crim.P. 590] precludes the supplementation of the oral colloquy by a written colloquy that is read, completed, and signed by the defendant and made a part of the plea proceedings." *Commonwealth v. Bedell*, 954 A.2d 1209, 1212-13 (Pa. Super. 2008) (citation omitted); *see also* Pa.R.Crim.P. 590, cmt.[5] Importantly, "[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath

---

[5] The record reflects both a written and oral plea colloquy. *See* Written Colloquy, 10/16/23, at 1-3; N.T., 10/16/23, at 3-15. On appeal, Appellant has not alleged that the trial court failed to delve into the six areas stated in *Reid* or presented an issue that the colloquy was inadequate. Accordingly, any challenge to the validity of the plea on the bases of those six areas is waived on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the statement . . . are waived"); *see also Muhammad*, 794 A.2d at 382 n.9 (holding that the appellant waived claim concerning the adequacy of his plea colloquy by failing to include it in his Rule 1925(b) statement).

and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted); ***see also Commonwealth v. Kahl***, 976 WDA 2024, 2025 WL 1002174, at *4 (Pa. Super. filed Mar. 31, 2025) (unpublished mem.) (explaining that where the appellant has been "sentenced in accordance with the plea, [the appellant's] knowing assent to the factual basis of his . . . conviction is binding, and it therefore may not be contradicted").[6]

When reviewing the trial court's ruling on a pre-sentence motion to withdraw a plea, we review the trial court's exercise of discretion as follows:

> When a [trial] court comes to a conclusion through the exercise of its discretion, there is a heavy burden [on the appellant] to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, an appellate court should not disturb a trial court's ruling.
>
> * * *
>
> [I]t is important that appellate courts honor trial court[s'] discretion in these matters, as trial courts are in the unique position to assess the credibility of claims of innocence and

---

[6] ***See*** Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdrawal of their please would promote fairness and justice.[]

**Garcia**, 280 A.3d at 1023-24 (some formatting altered) (quoting **Norton**, 201 A.3d at 120, 121).

Following our review of the record, the parties' briefs, and relevant legal authority, we affirm on the basis of the trial court's opinion. **See** Trial Ct. Op., 7/24/24, at 1-12. The trial court thoroughly addressed Appellant's claim of error, and we discern no abuse of discretion in the trial court's denial of Appellant's motion to withdraw his *nolo contendere* plea. **See Gordy**, 73 A.3d at 624; **Muhammad**, 794 A.2d at 382. For these reasons, we affirm.[7]

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/22/2025

---

[7] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

COMMONWEALTH

v.

DEREK C. SEIDERS

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
:
:
: CP-21-CR-1396-2022

OPINION PURSUANT TO PA.R.A.P. 1925

Peck, J., July 23, 2024 –

## I. Procedural History

On October 16, 2023, the morning he was set to go to trial, Appellant entered a nolo contendere plea to Count 1, Rape by Forcible Compulsion, and Count 7, Simple Assault, in satisfaction of the remaining charges at this docket.[1] About a month later, new counsel entered his appearance,[2] and on February 5, 2024, new counsel filed a Motion to Withdraw No Contest Plea on Appellant's behalf.[3] Following a hearing held thereon on February 26, 2024, we denied the motion.[4] We sentenced Appellant on April 22, 2024 to an aggregate term of 5 to 15 years in a state correctional facility and a consecutive period of 3 years of supervised probation.[5] Appellant filed a timely Notice of Appeal on May 17, 2024 and, subsequently, a Concise Statement of Matter Complained of on Appeal Pursuant to Rule 1925(b), raising the following issue:

Whether this Honorable Court erred by denying Defendant's Motion to Withdraw guilty plea based upon the totality of the issues raised in support of his motion? More specifically, including but not limited to, whether Defendant was properly advised about his potential sentence and parole date and whether Defense witnesses

---

[1] Order of Court, In re: No Contest Plea/Directed to Appear, October 16, 2023 (Peck, J.); Transcript of Proceedings, In re: No Contest Plea, October 16, 2023, at 2 (Peck, J.) (hereinafter "N.T. Plea at ___"). The remaining charges in the Information were Aggravated Indecent Assault, Incest of a Minor, Sexual Assault, Corruption of Minors, and Endangering the Welfare of Children. Criminal Information, filed August 8, 2022.

[2] Entry of Appearance, filed November 15, 2023.

[3] Motion to Withdraw No Contest Plea, filed February 5, 2024.

[4] In re: Motion to Withdraw No Contest Plea Denied/Oral Request to Use Commonwealth's Resources Granted/Sentence and SVP Hearing Continued/Commonwealth's Motion on Expert Granted, February 26, 2024 (Peck, J.).

[5] Order of Court, In re: Sentence, April 22, 2024.

had been interviewed and secured for trial causing Defendant to wish to withdraw his plea?[6]

We offer this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## II.    Facts and Discussion

The Commonwealth proffered the following facts at the time of the plea in support of Appellant's nolo plea to the rape charge:

> . . . [O]n or about July 4, 2019, through December 31, 2019, in the area of 4756 Enola Road, on three occasions the Defendant forcibly had sex with the victim L.[J.]H., [Appellant's daughter,] who was 12 and 13 years old at the time. The first incident occurred on the 4th of July where he forcibly had vaginal sex with her.
> The second incident occurred towards the end of summer, in which the Defendant came into her room, covered her mouth, held her down, and forcibly had vaginal intercourse with her. The third occasion, the Defendant took the victim to his room, bound her hands and feet, and forcibly had oral sex with her.[7]

In support of the simple assault plea:

> . . . [A]t the time, the juvenile, L.B.H., [Appellant's son,] was living in the home. The Defendant would strike him causing him to bleed on several occasions. . . . L.B.H. was 9 years old at the time. . . . [The strikes were] [i]n the face . . .[8]

Appellant alleged several bases in his motion to withdraw his plea prior to sentencing, namely: (1) he "has maintained his innocence throughout this entire process"; (2) "he did not have a meaningful conversation with his prior counsel explaining his plea deal and the pros and cons of going to trial until immediately before trial"; (3) he was under the impression he would be immediately paroled after the expiration of his minimum sentence; (4) his decision to plead was impacted by his realization that plea counsel failed to contact or subpoena witnesses he provided to plea counsel who he alleges would have rebutted the Commonwealth's version of

---

[6] Notice of Appeal, filed May 17, 2024; Concise Statement of Matter Complained of on Appeal Pursuant to Rule 1925(b), filed June 7, 2024.
[7] N.T. Plea at 4-5.
[8] N.T. Plea at 5-6.

events; (5) Appellant had asked plea counsel to obtain a police report for an incident when police were called for a welfare check on the house and the alleged victim was not present; and (6) Appellant was under the influence of prescription drugs at the time of the plea.[9]

At the hearing on the motion to withdraw his plea, Appellant testified that he was "always" leaving his plea counsel messages and sending e-mails to her which hardly evoked any responses. Specifically, Appellant said that he gave plea counsel the phone numbers of the witnesses he wished her to pursue several times "over the year" and brought one of those witnesses, Tonya Swisher, with him the day he was set to go to trial but ultimately entered a plea. He said that his plea counsel said she was not prepared to use his witnesses and couldn't use any of them as it was too late and they were irrelevant. As to the circumstances surrounding the plea, Appellant said plea counsel told him they were not prepared and they would have to make a plea, that "we got to make this quick" because they had to be in court in two minutes, that they didn't have any evidence to "back anything up," that the plea was for 5-10 years and that he would be able to be paroled within 5 years, and that they could go to trial but he would get more time if he went to trial and the plea was his best option. Appellant said he did not want to plead but because of his opinion of his counsel's lack of preparedness, he felt the trial would not result in his favor. He said she did "nothing" and that "you can't make the horse drink, you just take it to the water," implying that he had given her everything she needed to mount a defense and she failed to do so. Appellant acknowledged that he appeared by Zoom at his request for some of his pre-trial conferences because he was out of state, and we note that review of the docket indicates Appellant appeared by Zoom at least three times prior to trial.

---

[9] Motion to Withdraw No Contest Plea, filed February 5, 2024.

3

Appellant's new counsel, at the hearing to withdraw the plea, proffered that Ms. Swisher was unable to attend the motion hearing as she was hospitalized but she would testify that she previously lived with Appellant while they were in a romantic relationship and, to undermine the Commonwealth's evidence, there was no pattern of abuse. Defense counsel also proffered that the remaining witnesses Appellant wanted plea counsel to subpoena for trial were his roommates at some point and they would testify they similarly never saw any type of abuse. Appellant's only evidence of what these witnesses might have offered at trial consisted of his testimony that he did not know what years he was living with Ms. Swisher, he did not know what years he was living with roommates, and that one of those roommates and proposed witnesses, Mr. Claire, was present for one of the alleged incidents of sexual assault on July 4 (year unspecified). Appellant testified that "Jason" came over and took the children and when police arrived for a welfare check, the kids were not present; they were at "Jason's."[10] Appellant said nothing of the fact that the Commonwealth's evidence would establish that the sexual assaults occurred on more occasions than one incident on July 4th.

When a presentence motion to withdraw a plea is based on a claim of innocence, as Appellant's is, in part, "the innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea." Commonwealth v. Norton, 201 A.3d 112, 120 (Pa. 2019) (quoting Commonwealth v. Carrasquillo, 115 A.3d 1284, 1292 (Pa. 2015)). "[A]ny demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." Carrasquillo, 115 A.3d at 1292. It has been observed:

---

[10] Appellant's motion avers that the proposed witnesses were Brandon Claire, Steven Shelly, and Tonya Swisher.

4

> . . . "[T]he proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." While the *Carrasquillo* Court acknowledged that the "policy of liberality remains extant," the Court explained that this policy "has its limits, consistent with the affordance of a degree of discretion to the common pleas courts."
>
> Thus, the *Carrasquillo* Court clearly established that trial courts have the discretion to assess the plausibility of claims of innocence. Consistent with the well-established standards governing trial court discretion, it is important that appellate courts honor trial courts' discretion in these matters, as trial courts are in the unique position to assess the credibility of claims of innocence and measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdrawal of their pleas would promote fairness and justice.

Norton, 201 A.3d at 120-21 (quoting Carrasquillo, 115 A.3d at 1292) (internal citations omitted). In making this determination, the timing of a defendant's motion, the defendant's knowledge of his available defenses at the time of plea, the nature of the innocence claim, and the strength of the Commonwealth's evidence are relevant factors. See id. at 122; Commonwealth v. Garcia, 280 A.3d 1019, 1025 (Pa. Super. 2022), *reargument denied* (June 21, 2022), *appeal denied*, 293 A.3d 566 (Pa. 2023); Commonwealth v. Islas, 156 A.3d 1185, 1191 (Pa. Super. 2017).

We denied Appellant's motion notwithstanding his claim of alleged innocence on the basis of our conclusion that Appellant's claims lack credibility and sincerity, that the Commonwealth presented facts evidencing the likelihood of conviction and the strength of its case relative to Appellant's claims of innocence, and that the timing of Appellant's motion weighed in favor of denial. The Commonwealth was prejudiced by the late request, as it had present two young victims who were prepared to immediately go to trial the same day as Appellant's plea. We note that prejudice suffered by the Commonwealth need not be examined where a fair and just reason for withdrawal is not demonstrated. Commonwealth v. Johnson-Daniels, 167 A.3d 17, 25 n.8 (Pa. Super. 2017). We did find, however, that the Commonwealth would be substantially prejudiced on the basis that *Appellant entered his plea on the morning of trial while the victims waited to testify.* Appellant gained from the timing

5

of his late request in that he avoided the peril of a trial on all charges, despite this Court's admonishment that he could immediately go to trial the day he entered a plea if he were innocent (as more fully set forth below).

Appellant claimed that he pled upon realizing that plea counsel failed to subpoena his proposed witnesses. These witnesses, however, in light of Appellant's testimony, did nothing to aid in his defense such that we could say he made a plausible claim of innocence. The allegations presented by the Commonwealth, in part at the plea colloquy and in part at the motion hearing, were that Appellant assaulted his children sexually and physically over a period in 2019 when the mother of Appellant's children left their home, and that *Appellant was not living with Ms. Swisher or with roommates at that time.* We therefore found that Appellant's proposed witnesses did not support a plausible claim of innocence, where such witnesses allegedly would have testified that they lived with Appellant and never saw any abuse, but *Appellant had no idea what years he lived with said witnesses.* Complicating matters with respect to Ms. Swisher, the Commonwealth's investigation revealed that in 2021, when Appellant *was* living with Ms. Swisher, a ChildLine report was made regarding Appellant's children and while no disclosures or allegations were made at that time with respect to the children, the outcome of that report was that Ms. Swisher reported to police that Appellant had sexually assaulted *her.* On this point, we note that defense counsel at the motion hearing said Ms. Swisher had text messages to show one of the victims saying she would do anything she needed to do to avoid living with her father. Defense counsel, however, had never seen these alleged text messages, nor did Appellant testify about them or indicate he had seen them or believed them to exist.

The Commonwealth's evidence, meanwhile, is compelling and substantial. The children were both prepared and present to testify to the facts in support of Appellant's charges, namely to the sexual and physical abuse, accompanied by the

6

recordings of their forensic interviews making the same disclosures. The children also had made disclosures to their paternal step-grandmother, who would testify that she had observed Appellant kick his son, that she observed a chocolate bar smashed onto Appellant's daughter's head by Appellant, and that she otherwise observed Appellant demonstrate extreme aggression to the extent that the children would flinch when Appellant spoke using his hands. Paternal step-grandmother also would testify to admissions of abuse made by Appellant. The jury was ready to be selected where that evidence would immediately be presented in a fair trial of Appellant. Cognizant of that, Appellant chose to enter a plea.

We found that Appellant's claims that he entered into the plea on the basis that he believed he would be paroled in five years, that he claimed counsel was not prepared for trial, that he did not have enough time to discuss the plea with his plea counsel, and that he was under the influence of drugs and alcohol were belied by his statements during the plea colloquy. His plea counsel, whom we know from experience to be a prepared and seasoned attorney, placed on the record his reasons for entering the nolo plea, namely that he recognized a jury could find him guilty based on his daughter's testimony. Appellant had nothing to add to plea counsel's statement, but he did make his disagreement known when this Court noted we understood from meeting with counsel prior to the plea that he was under the influence at the time of the alleged conduct:

> THE COURT: So before we proceed, Ms. Haynes,[11] tell me what the reason is, why you're asking me to accept a nolo contendere.
> MS. HAYNES: Your Honor, we're asking Your Honor to accept a nolo because Mr. Seiders recognizes that a jury could find him guilty – Mr. Seiders recognizes that a jury could find him guilty based off of the testimony of [his daughter] and that he does not wish to go through trial and put everybody through that, and that he knows that the Commonwealth could prove their case through [his daughter's] testimony.

---

[11] Plea counsel was Andrea Haynes, Esquire.

7

> THE COURT: Additionally, we were speaking with all attorneys present back in chambers. I understood he was intoxicated on the evening in question?
> MS. HAYNES: Yes, Judge.
> THE COURT: Tell me about that.
> MS. HAYNES: Judge, he does not agree with what —
> THE COURT: Is that not true?
> THE DEFENDANT: (Shook head.)
> THE COURT: Why don't you talk to your client.
>
> . . .
>
> MS. HAYNES: Judge, he agrees that he'd been drinking. He does not agree with what [his daughter] says happened, but he understands that her testimony could come across credible to the jury and that he could be convicted based off of her testimony and what she says happened.
> THE COURT: Okay. And, additionally, are you asking me to take this so that he can get the benefit of the plea deal?
> MS. HAYNES: Yes, Judge.[12]

Put another way, we asked specifically why Appellant was taking the plea, as we always do where nolo pleas are involved to ensure there is a valid reason to accept such nolo plea and to ensure a defendant is making a knowing decision. When plea counsel put Appellant's reasons on the record, Appellant took issue with the idea that he was intoxicated during the criminal conduct. We therefore gave him time to speak with his counsel before proceeding on the plea. When we reconvened, same would have been the precise time to indicate that he was pleading because he felt counsel was not prepared, if true. Similarly, we asked Appellant if any threats or promises had been made to induce the plea, to which he responded in the negative,[13] which belies his claims that he felt pressured to enter the plea or that he believed he would be paroled before his minimum sentence expired, particularly because *the agreed-upon sentence was discussed at length* at the plea hearing prior to his entry of the plea, and included no mention of Appellant being released prior to the expiration of his minimum sentence.[14] See Commonwealth v. Contreras, 283 A.3d

---

[12] N.T. Plea at 2-3.
[13] N.T. Plea at 9.
[14] N.T. Plea at 2-4, 6-9.

8

355 (Pa. Super. 2022) (unpublished decision cited for persuasive value) (noting that "[e]rroneous advice from counsel which renders a guilty plea unknowing, involuntary, or unintelligent may also constitute a fair and just reason for withdrawing a plea," but "a defendant's claim that he did not understand the terms of the plea agreement . . . can be belied by the defendant's statements" at the colloquy). We do not find of record any erroneous advice given by plea counsel, and, to the contrary, find ample opportunities for Appellant to have advised this Court of any issues he had with the plea.

Another example of this is that Appellant could have brought up his concerns when we indicated the difficulty we would have in granting a motion to withdraw his plea at a later time given that the jury was ready for selection, at which time we gave him additional time to speak with counsel. We then asked if he had anything he wished to say, to which he responded in the negative:

> THE COURT: Okay. Mr. Seiders, I'm indicating to you that because we have a jury right now, and we would – I would give you a jury trial if that's what you wanted to have happen. If you sought to withdraw your plea at a later time, I would likely deny that.
>
> I would, of course, have to look at what that is, but I want you to be aware that that would likely get denied because, otherwise, the time is now for you to go to a jury trial. Do you understand?
> THE DEFENDANT: Yes.
> THE COURT: Do you want to talk to your attorney about what I mean?
> THE DEFENDANT: Maybe a little.
> (Discussion was held between Attorney Haynes and the Defendant off the record.)
> THE COURT: So, to be clear, in other words, sir, if you told me at a later time that you were innocent I would likely deny it on that basis because if you're innocent we would go to trial right now. Do you understand?
> DEFENDANT: Yes.
> THE COURT: Is there anything else you wanted to say?
> THE DEFENDANT: No.[15]

Understanding that Appellant later claimed he felt he had no choice but to plead because of counsel's lack of preparedness, we were dubious of such a claim given

---

[15] N.T. Plea at 11-12.

9

that at several points we gave Appellant the opportunity to state such concerns and he said nothing. His testimony at the motion hearing strains credulity. We also note the significance, in our view, of the timing of Appellant's plea which we found to undermine the credibility of his testimony. As indicated in the above excerpt, a jury was waiting to be selected for his trial when he entered the plea. The plea followed a string of defense motions requesting that Appellant be excused from having to appear in person for the proceedings leading up to trial, and he had made the effort to come to Pennsylvania to meet with his attorney only once or twice, he said. The argument and Appellant's testimony that he had "led the horse to water" and had been backed into a corner by lack of communication and preparation by his counsel therefore lacked both credibility and sincerity, given that it appeared he had done little to be so much as present in the Commonwealth in the months leading up to his trial.

As to Appellant's averment in the motion that he was under the influence of prescription drugs at the time of the plea, we heard no evidence as to this in his testimony or otherwise at the hearing on his motion to withdraw the plea. Indeed, we asked Appellant prior to acceptance of his plea whether he was under the influence of drugs or alcohol, to which he responded, "no."[16]

Finally, we note that we had hoped to hear testimony from Appellant's plea counsel at the hearing on Appellant's motion. While it was Appellant's burden of production and persuasion, we are cognizant that the standard for presentence withdrawal of a plea falls far short from the showing required for post-conviction relief, for example. However, we were still tasked with determining whether Appellant's statements were credible, including those on his alleged misapprehension of the sentence, and whether his claim of innocence was plausible.

---

[16] N.T. Plea at 9. See also Nolo Contendere Colloquy, filed October 16, 2023.

10

When we asked motion counsel whether he had subpoenaed plea counsel for the hearing, he responded that he had not and that without her, we are left with Appellant's uncontradicted testimony. We found, however, that Appellant's testimony at the hearing was in fact contradicted by his statements at the plea and the circumstances surrounding entry of his plea and we determined that fairness and justice would be served only by allowing the plea to stand.

We acknowledge that "[t]he law does not require a compelling case for the defendant's innocence, only a plausible one based on the available facts." Commonwealth v. Garcia, 280 A.3d 1019, 1027 (Pa. Super. 2022). But see Commonwealth v. Gary, 307 A.3d 636, at *5 (Pa. Super. 2023) (unpublished decision cited for persuasive value) (weighing the defendant's assertions of innocence against "the ample evidence set forth in the affidavit of probable cause"). We also recognize that Appellant's claim that he pled when he learned trial counsel failed to subpoena the witnesses he proposed sounds in both an innocence claim and a claim that he was unlawfully induced to plead or otherwise entered an involuntary plea. We did not find Appellant's claim of innocence a plausible one, based on the facts presented at the plea and at the motion hearing. We did not find that fairness and justice required withdrawal of the plea where Appellant claimed he was shocked to learn the defense was not as he envisioned when he had forgone opportunities to meet with his counsel prior to trial, where the proposed witness testimony was unsupported by any evidence other than vague assertions by Appellant who had little idea about how precisely those witnesses would have aided in his defense and/or had no direct knowledge of what the witnesses would testify to, where he was given every opportunity at the plea hearing to voice his concerns to this Court prior to entry of the plea and in fact did take issue with a collateral matter but said nothing of any inducement he felt to plead or even alluded to any of the issues he claimed in his motion, and where the Commonwealth's witnesses were lined up and the jury was

11

ready for selection when he entered his plea. See Garcia, 280 A.3d at 1026-27 (finding that the motion to withdraw should have been granted where the defendant relied on the preliminary hearing transcript of the victim's testimony to support a defense, where there was "no strong evidence to undermine the plausibility of" the defense, and where the court was "not faced with a guilty plea entered on the eve of trial"); Commonwealth v. Samuels, 307 A.3d 636, at *8 (Pa. Super. 2023) (unpublished decision cited for persuasive value) (noting the significance of the timing of the defendant's innocence claim where he had "several opportunities" to raise the issue previously); Commonwealth v. Ortiz-Cuevas, 285 A.3d 939, at *3-4 (Pa. Super. 2022) (unpublished decision cited for persuasive value) (noting that "consistently maintain[ing] his innocence . . . does not necessarily inure to [a defendant's] benefit" where the defendant never admitted guilt (non-guilty plea) and therefore a "profession of innocence . . . did not necessarily represent a change in circumstances," and "possibly represented 'buyer's remorse'"); Commonwealth v. Abreu, 248 A.3d 493, at *7-8 (Pa. Super. 2021) (unpublished decision cited for persuasive value) (commenting on the weakness of alleged evidence of innocence targeted at challenging the credibility of a complaining witness where the defendant was aware of that information at the time he entered his nolo plea). We discern no error.

BY THE COURT,

_____
Christylee L. Peck,       J.

Distribution:

Julia Skinner, Esquire

Timothy M. Barrouk, Esquire

12

Copies Distributed JUL 24 2024